UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR GUILLEN,<br><br>    Plaintiff,<br><br>v.<br><br>SEIU UNITED SERVICE WORKERS WEST, et al.,<br><br>    Defendants. | Case No. 3:16-cv-04279-JD<br><br>**ORDER RE JURISDICTION**<br><br>Re: Dkt. No. 27 |

Plaintiff Salvador Guillen filed a complaint against SEIU United Service Workers West ("SEIU") in California Superior Court alleging that SEIU failed to pay him wages as required by California law and that he was wrongfully terminated after his supervisor sexually harassed him. Dkt. No. 1-1. SEIU timely removed to federal court on the basis that Section 301 of the Labor Management Relations Act ("LMRA") preempted all of Guillen's claims. Dkt. No. 1. After reviewing the complaint and other materials on file, the Court raised the issue of whether it had subject-matter jurisdiction over the case. Fed. R. Civ. P. 12(h)(3). The Court directed SEIU to submit a jurisdictional statement and stayed the case. Dkt. No. 26. SEIU submitted its statement and Guillen opposed. Dkt. Nos. 27, 28. Federal subject matter jurisdiction has not been shown. Consequently, the case was improvidently removed and is remanded to California state court for further proceedings. 28 U.S.C. § 1447(c).

**LEGAL STANDARDS**

As a general rule, the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This principle recognizes that the plaintiff is the master of his or her claim, and in the usual case, "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

But even when only state law claims have been pled, "complete pre-emption" is a basis for removal. *Id.* at 393. Section 301 of the LMRA is a federal statute that has complete preemptive force. *Id.* at 393-94. "The Supreme Court decided early on that in enacting this statute, Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citations omitted). "The preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Id.* (quotation and citation omitted). If preempted under Section 301, any claim based on state law is "considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

Our circuit uses a two-step analysis to determine whether Section 301 preemption applies. The Court first asks "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]." *Burnside*, 491 F.3d at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id.* If, however, the right exists independently of the collective bargaining agreement, the Court "must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (citations omitted). A state law right is "substantially dependent" on the terms of a CBA if the Court must interpret, as opposed to merely "look to," the collective bargaining agreement to resolve the plaintiff's claim. *See id.* at 1060.

In making this inquiry, the Court may properly consider documents extrinsic to the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir.1998) ("Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims.").

**DISCUSSION**

SEIU argues that the Court has federal-question jurisdiction over Guillen's claim for overtime wages under California Labor Code ("CLC") Section 510 and supplemental jurisdiction

over Guillen's seven other wage claims.[1] Dkt. No. 27. Section 510 sets out minimum compensation rates for overtime work, with several exemptions. Cal. Lab. Code § 510. One set of exemptions stems from Labor Code Section 515(a), which authorizes the Industrial Welfare Commission ("IWC") to "establish exemptions from . . . [Section 510] for executive, administrative, and professional employees." Cal. Lab. Code § 515(a). 515(a) is relevant here because Guillen alleges that under the IWC exemptions, he was "misclassified as an exempt employee and paid a flat salary," and was denied "overtime/double time pay" owed to him as a non-exempt employee who "frequently worked in excess of 8 hours a day, and 40 hours per week." Dkt. No. 1-1 at 2-6.

Section 510 also expressly exempts employees working under an "alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code § 510(a)(2). Such a CBA must be "valid," "expressly provide[] for the wages, hours of work, and working conditions of the employees," and "provide[] premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. If a CBA covered Guillen's employment with SEIU, then Section 510's overtime requirements do not apply to Guillen even if he was misclassified under the IWC scheme. Guillen's overtime claim would then necessarily "involve[] a right, if any, that arises out of his collective bargaining agreement" and consequently be preempted under Section 301 of the LMRA. *Coria v. Recology*, 63 F. Supp. 3d 1093, 1100 (N.D. Cal. 2014).

Guillen's employment with SEIU was governed by two different CBAs, one spanning 2011 to 2014 and one covering 2014 to 2017. Dkt. No. 29-1 at 2. Both CBAs expressly provided for wages, work hours, and working conditions in Sections 4 ("Hours, Overtime, and Compensation Time"), 13 ("Working Conditions"), and 33 ("Salary Schedule and Classifications"). *See generally id.* Both CBAs also provided wages greater than 30 percent more than state minimum wage. *Id.* at ECF pp.36, 91. Consequently, whether the CBAs satisfy Section

---

[1] SEIU no longer argues that the Court has jurisdiction over Guillen's sexual harassment claims.

3

514 turns on whether they provide "premium wage rates for all overtime hours worked." Cal. Lab. Code § 514.

SEIU argues that both CBAs provided premium wage rates for all overtime. Hourly employees received "one and one-half (1-1/2) times their normal hourly rate of pay for all hours worked in excess of eight (8) hours in one day or forty (40) hours in one week." Dkt. No. 29-1 at ECF pp.12, 66. Salaried workers received compensation time when their work schedule required work on four consecutive weekends. *Id.*

Contrary to SEIU's position, it is not at all clear that the CBAs provide premium wages for all overtime pursuant to Section 514. That is because for salaried workers, the CBAs provide compensation only when employees are required to work on more than four consecutive weekends. *Id.* Moreover, the use of compensation days is restricted: they "shall be accumulated for up to six (6) months before being lost," and employees "with sufficient accrued vacation shall be required to use vacation for scheduled leave of more than three (3) consecutive days rather than Compensation Days." *Id.* This compensation day policy does not obviously comport with state law governing overtime for salaried workers. Section 515, for example, provides, "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary." Cal. Lab. Code § 515(d)(1). Section 515 also provides that "Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, non-overtime hours, notwithstanding any private agreement to the contrary." Cal. Lab. Code § 515(d)(2).

Determining whether the CBAs provide premium wage rates at all, and if so, whether premium wage rates are provided for all overtime hours worked, is purely "a question of interpretation of state law." *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003). In that case, the Ninth Circuit held that Section 301 did not preempt a Section 510 claim where it was unclear whether the CBA paid overtime for all overtime hours worked as required by Section 514. That was a state law question on which the CBA lacked "any bearing" because it was "silent about whether hours worked on different productions are or are not to be aggregated when calculating

4

overtime hours worked." *Id.* Interpreting the CBA was unnecessary: "all that was needed to determine Gregory's claim were the earning reports for each day worked." *Id.*

So, too, here. The Court need only "look to" the CBAs to resolve whether Section 514 exemption applies. The CBAs are perfectly clear about what compensation is due to salaried workers. No substantial interpretation of its terms are required, and whether the compensation time scheme for salaried workers provides "premium wage rates for all overtime hours worked" under Section 514 is purely a matter of state law. This case is readily distinguishable from *Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), which found Section 301 preemption where substantial interpretation was required to resolve "whether the compensation received by the employees under a complex formula of the CBA constituted the premium wage rates required by California law" by examining "how premium wage rates [were] calculated under the CBA." *Gregory*, 317 F.3d at 1053 n.3 (distinguishing *Firestone*).

SEIU says that even if Section 514 does not apply, Guillen's claims are still preempted because the IWC exemptions require consideration of "the employer's realistic expectations and the realistic requirements of the job," which are "incorporated into the CBA as job descriptions." Dkt. No. 27 at 7 (citing Cal. Code Regs. tit. 8, § 11040). This argument is unavailing for two reasons. First, SEIU has not demonstrated why looking at the CBA's job descriptions would entail substantial analysis of the CBA itself. Second, SEIU has not shown that the Court would have to consult the CBA when "deposition testimony, work logs, and other relevant evidence" could suffice. *Smith v. SEIU, Local 521*, No. 16-cv-02547-LHK, 2016 WL 4268713, at *4 (N.D. Cal. Aug. 14, 2016).

SEIU's final point is that if Section 510 does give Guillen a right to overtime, then whether SEIU complied with Section 510 will require an adjudicator to calculate the value of the compensation days that Guillen received as a salaried employee under the CBAs. Dkt. No. 27 at 8. That calculation, SEIU says, must interpret terms in the CBA and refer to the parties' bargaining history. That is an overstatement. The questions identified by SEIU -- such as "if the automatic comp day . . . [was part of] overtime compensation under California law," the "discrete monetary value" of compensation days, and "how many hours were in a 'regular day' for a

5

salaried employee" -- are all questions of fact or state law that can be decided without substantially analyzing the CBA.

## CONCLUSION

Federal subject matter jurisdiction is not present here. Pursuant to 28 U.S.C. § 1447(c), the case is remanded to the California Superior Court. Plaintiff's request for sanctions is denied.

**IT IS SO ORDERED.**

Dated: December 13, 2017

JAMES DONATO
United States District Judge